KAY McKENZIE PARKER #143140
LAW OFFICE OF KAY M. PARKER
1999 Harrison Street, Suite 1867
Oakland, CA 94612
(510) 496-4722 Telephone
(510) 654-4899 Facsimile

Attorneys for Plaintiff
DOLLI ZUGHEIB

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLI ZUGHEIB,<br><br>       Plaintiff,<br><br>vs.<br><br>SANDRA LUCAS, an individual, and KIMBERLY UNDERWOOD, an individual,<br><br>       Defendants.<br>_____ | **Case No.**<br><br>**INDIVIDUAL COMPLAINT UNDER 42 US.C. § 1983 FOR VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION;  AND FOR VIOLATION OF CALIFORNIA CIVIL CODE § 51, ET SEQ.** |

COMES NOW DOLLI ZUGHEIB (Plaintiff) and alleges as follows:

**THE PARTIES**

1.      Plaintiff, an adult U.S. citizen, was at all times herein mentioned, a resident of the County of Stanislaus, State of California. She is, and was at all times mentioned herein, the mother with joint legal and physical custody of her two minor children.

2.      Defendant SANDRA LUCAS (Lucas), an individual who, at all times mentioned herein, acted outside the scope of her jurisdiction and authority as a family court services supervisor in Stanislaus County, CA to intentionally deprive Plaintiff of the rights, privileges and immunities guaranteed to Plaintiff by the 1st and 14th Amendments to the U. S. Constitution, other federal laws, and state laws because of Plaintiff's religion and national origin. Therefore, she is not immune from

1

1    suit as her actions were not official acts authorized under any laws.

2        3.      Defendant KIMBERLY  UNDERWOOD (Underwood), an individual who, at all times

3    mentioned herein, acted outside the scope of her jurisdiction and authority as a court appointed child

4    custody evaluator in Stanislaus County, CA, but who is a private practitioner independently licensed

5    by the State of California as a marriage and family therapist, to intentionally deprive Plaintiff of the

6    rights, privileges and immunities guaranteed to Plaintiff by the 1st and 14th Amendments to the U. S.

7    Constitution, other federal laws, and state laws because of Plaintiff's religion and national origin.

8

9                            **JURISDICTION**

10      4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332.  This action is

11    brought to redress violations of Plaintiff's rights to be free of religious and national origin

12    discrimination and to be treated equally in receiving services, privileges, and immunities afforded to

13    others not of Plaintiff's same religion and/or national origin.   Plaintiff requests the Court to exercise

14    supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over her state law claim for violations of the

15    California Unruh Act, Civil Code § 51, et seq.  The Stanislaus County Family Court is not equipped

16    and cannot provide an adequate opportunity for Plaintiff to raise the federal questions at issue in the

17    State divorce proceeding, and have not shown the ability or the willingness to provide protection of

18    Plaintiff from religious and national origin discrimination under federal and/or state laws.  In addition,

19    an appeal would be futile at the end of the State Court dissolution proceeding because, for one thing,

20    the minor children will have been permanently emotionally damaged and they will have become

21    adults after all appeals are exhausted in the State Courts.

22

23                     **COMMON ALLEGATIONS**

24      5.      Plaintiff was, at all times herein mentioned, the Petitioner for dissolution of her 16-year

25    marriage which bore two children, a  boy who at the commencement of the dissolution in October,

26    2013 was 13 years old ("M") and a girl who was then 10 years old ("J").

27                                                                       2

28

1    6.    Plaintiff is an American Citizen who was born in Lebanon where she married Sarjoun

2    Adam (Sarjoun) in January 1999, he an Iraqi citizen who had moved to Lebanon in 1997 during the

3    Iraq war. Their two children M and J were born in Lebanon in 2000 and in 2002, respectively. The

4    family moved to America in 2008.

5    7.    Plaintiff alleged in her Petition that after they moved to America, Sarjoun became

6    abusive towards her physically, mentally, and emotionally especially after he began drinking alcohol

7    on a regular basis, and his family, some of whom had moved to America with them, including his

8    mother and father, also became abusive towards her.  She alleged that they all treated her like a slave

9    and less than a second class citizen. They spoke English fairly well which they were taught in schools

10   in Iraq as required courses while she was struggling to learn to speak and write English which she had

11   not been taught in schools in Lebanon which required French lessons instead.

12   8.    Sarjoun and his family are Assyrians and do not consider themselves Arabs. However,

13   the Lebanese citizens welcomed the Assyrians entering Lebanon with freely, giving them residency

14   status immediately.  However, after arriving in America, Petitioner describes how Sarjoun and his

15   family "turned against her" because she is an Arab and from a Muslim background. They did not hide

16   their dislike of her and did not intervene to stop Sarjoun's abuse of her, even though they insisted they

17   were Christians. Petitioner had become a Christian after marrying Sarjoun, and this was not a difficult

18   decision for her because her own mother is a Christian.  However, the Assyrian Christians in the

19   Stanislaus County Church did not accept her and she was isolated and became depressed within one

20   and half years after arriving in America. She had been a retail clerk in a Department Store for

21   women's clothing and makeup in Lebanon but had been reduced to scrubbing floors and cleaning

22   toilets all day for the Assyrian family she found herself living with. She put up with everything for the

23   sake of her children.  Finally, in 2010, she had a visit from a lady from one of the World Relief

24   Organizations that had helped them all move to America and she was able to tell the story of what was

25   happening to her.  That lady immediately found separate housing for Petitioner, Sarjoun, and their

26   children – away from his family.  Petitioner and her children heard nothing for 3 years from them –

27                                                                                      3

28

1  they were totally estranged – no Christmas cards, no phone calls, no gifts, no letters – UNTIL

2  Petitioner filed the Petition for Dissolution of Marriage in October, 2013.  (From 2010 to 2013,

3  Sarjoun had not stopped his abuse or his excessive drinking of alcohol after they had moved away

4  from his family.) She had no other family in America and there were only a few people who she could

5  talk to in Arabic. Finally, in November, 2010, other Arabic speaking people moved into her

6  neighborhood in the rural area of Modesto where she lived.  She had a few friends and Sarjoun and

7  the children enjoyed their new neighbors as well – visiting one another on a regular basis to share

8  dinners and comraderie.

9     9.     However, after Petitioner filed for dissolution of the marriage, Sarjoun immediately

10  went to his family for assistance and they all joined together to start an extremely aggressive, hostile,

11  and vicious campaign against Petitioner to take her children away from her. Petitioner was still an

12  "Assyrian Christian" at that time.  The campaign of alienation of her children has grown worse from

13  week to week since her pro se Petition was filed in October, 2013.

14     10.     On December 3, 2013, Underwood conducted a "child custody evaluation" in order to

15  make a recommendation to the Court about Petitioner's and Sarjoun's custody and visitation rights.

16     11.     Underwood immediately aligned with Sarjoun and his family – meeting with Sarjoun

17  and his attorney but refusing to meet with Petitioner and her attorney. Underwood received

18  documentation and "evidence" from Sarjoun and his "people" but refused to accept documentation or

19  evidence from Petitioner or her attorney.  Underwood's limited scope evaluation was allegedly with

20  the children alone however, she admits to having met with the father. Underwood admits that her

21  evaluation lasted approximately 30 minutes and was held in her private office. During the 30 minute

22  evaluation, Underwood heard nothing but input from Sarjoun and his "people" about how Petitioner

23  had become a Muslim and they were Assyrian Christians and that the children were afraid of her and

24  did not want to be with her.  She heard from the 13 year old son M, and reported to the Court, that

25  Petitioner had tried to abort him when she was 3 months pregnant with him. She heard from the 13

26  year old son M, and reported to the Court, that he has Vitaligo, a skin disease caused by stress

27                                                                                                 4

28

1    inflicted on him by Petitioner.  Underwood heard from the 13 year old son M, and reported to the

2    Court, that the miscarriage Petitioner had in July, 2010 was not caused by being battered by Sarjoun

3    but was instead caused by menopause, and M told Underwood "we" have "her" medical records from

4    the hospital emergency room showing this.  However, the medical records do NOT state anything

5    whatsoever about menopause being the cause of the miscarriage but do note that Sarjoun was present

6    when Petitioner was questioned about what happened to her when bruises were noted by the nurse.

7            12.      Simultaneous with Underwood's "custody evaluation report" being written and

8    published, the Judge had issued an order granting full custody of the children to Petitioner.

9    Unfortunately, upon receiving Underwood's report, the Judge immediately retracted that order. By

10   that time the 13 year old son M was living with Sarjoun and the 10 year old daughter J was living with

11   Petitioner. Retraction of the order left the children separated and left M in an "alienation camp" with

12   Sarjoun and his family where he became so indoctrinated to hate his mother and all Muslims that he

13   refused visitation and became abusive towards his mother – spitting on her when he saw her. The next

14   step – with Underwood's help – was to alienate the daughter J.

15           13.      Underwood lost all professionalism and disregarded all laws and became a willing

16   participant along with Sarjoun in the "alienation camp" he had set up at the home where he and M

17   now resided with his family again. She became actively involved in making reports which she knew

18   the Judge would act upon to draw the daughter J farther away from the "Muslim" mother. J had

19   reported that "dad loses control from time to time"; however, Underwood did not want to hear that

20   and she ignored the statement by the child.   J had reported that she loves her mom; however,

21   Underwood did not want to hear that but instead reported that M reports that he remembers how bad

22   they were treated in Lebanon by Muslims when he was a child.  Underwood ignored that M's words

23   and sentiments were clearly not those of a 13 year old – especially talking about events that occurred

24   before he was born.

25           14.      Petitioner filed a formal complaint against Underwood and requested that she be

26   removed as evaluator in the case. (She was also assigned as the mediator to hear all disputes and make

27                                                                                                      5

28

1   recommendations to the Judge throughout the case).  The Stanislaus County Family Court procedure

2   contained a local rule mandate that before a party can make a motion to the Judge against an

3   evaluator, the person must file a complaint with Family Court Services (Sandra Lucas) for decision

4   and resolution by Lucas.  If the party is not satisfied with Lucas' decision, then the party has a right to

5   make a motion to the Judge. (See Stanislaus Local Rule 7.15E.)  The formal complaint was filed with

6   Lucas' office on January 3, 2014, prior to the :hearing on the evaluator's report which set for hearing

7   on January 7, 2014.

8       15.     On January 7, 2014 at the "hearing", Petitioner's attorney informed the Court about the

9   formal complaint against Underwood and the fact that no decision had been issued by Lucas.  The

10  Judge telephoned Lucas to come to court to help him out. When she arrived in the courtroom,  the

11  Judge told her about the situation and asked her what to do.  She immediately stated "I am not

12  removing Underwood. When was this complaint filed? I haven't seen it yet."

13      16.     To this date, Lucas has never reviewed the Complaint or made a decision on it.

14      17.     The case has proceeded with Underwood and Lucas running the entire show.  On

15  November 25, 2014,  Underwood arrived at a duly noticed deposition by Petitioner's attorney.

16  However, she was on the cell phone with Lucas the whole time and to each question that was posed to

17  her, she responded, "I am instructed not to answer that question".  She was sworn in and stated her

18  name. She gave no other information.

19

20

21              **FIRST CLAIM FOR RELIEF**
                **42 U.S.C. § 1983**
22          **(1ˢᵗ and 14ᵗʰ Amendment Violations)**

23      18.     Plaintiff re-alleges and incorporates by reference herein each and every allegation

24  stated in Paragraphs 1 through 17, above, as though fully stated herein.

25      19.     Lucas and Underwood, by their unauthorized, non-judicial actions, have violated

26  Plaintiff's rights under the 1ˢᵗ and 14ᵗʰ Amendments to the U.S. Constitution.

27                                                                                          6

28

1    20.    The unlawful discrimination and practices complained of above were and are

2  intentional.

3    21.    The unlawful discrimination and practices complained of above were done with malice

4  and/or reckless indifference to the federally protected rights of Plaintiff.

5

6                          **SECOND CLAIM FOR RELIEF**
               **CALIFORNIA UNRUH ACT – Civil Code §51 et seq.**
                   **(Discrimination in Business Accommodations)**

7

8

9    22.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

10  stated in Paragraphs 1 through 21, above, as though fully stated herein.

11    23.    Lucas has violated Plaintiff;s rights under the Unruh Act.

12    24.    Underwood has violated Plaintiff's rights under the Unruh Act.

13    25    The unlawful discrimination and practices complained of above were and are

14  intentional.

15    26.    The unlawful discrimination and practices complained of above were done with malice

16  and/or reckless indifference to protected rights of Plaintiff under the California Unruh Act.

17

18                          **REQUEST FOR JURY TRIAL**

19    Plaintiff DOLLI ZUGHEIB hereby requests a trial by jury.

20

21                           **PRAYER FOR RELIEF**

22    WHEREFORE, Plaintiff prays for relief as follows:

23    1.    Judgment for Plaintiff Dolli Zugheib and against Defendant Sandra Lucas and against

24  Defendant Kimberly Underwood;

25    2.    For general damages according to proof;

26    3.    For special damages according to proof;

27                                                                              7

28

1      4.      For exemplary punitive damages, according to proof;

2      5.      For post judgment interest at the prevailing rate;

3      6.      For costs of suit, including reasonable attorneys' fees; and

4      7.      For such other and further relief as the Court may deem just and proper.

5

6  Dated: December 2, 2015         LAW OFFICE OF KAY McKENZIE. PARKER

7

8                       *Kay McKenzie Parker*            
                       KAY McKENZIE PARKER

9                       Attorneys for Plaintiff DOLLI ZUGHEIB

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            8

28